**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| 1. ROBERT McINTYRE, M.D., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| 1. UNITED STATES INDIAN HEALTH SERVICE and | ) | |
| | ) | |
| 2. VISTA STAFFING SOLUTIONS, INC., a Utah Corporation, | ) | |
| | ) | |
| Defendants. | ) | **JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW the Plaintiff, Robert McIntyre, M.D., by and through the undersigned legal counsel, and for his complaint against the Defendants allege and states as follows.

### NATURE OF THE ACTIONS

This is an action in breach of contract. The Defendant IHS, acting by and through the Navaho Area Office and Chinle Comprehensive Healthcare Facility breached its staffing contract with Defendant Vista Staffing Solutions, Inc. by failing to cite professional incompetence or personal conduct to support discharge of the Plaintiff, or in the alternative gave a false report of professional incompetence or personal conduct to support the discharge of the Plaintiff. And the actions of Defendant IHS were taken in deliberate retaliation against the Plaintiff who had previously formally blown the whistle on unlawful conduct at the Chinle comprehensive Healthcare Facility by naming federal employees or contractors. And the Defendant Vista breached its contract with the Plaintiff to make reasonable inquiry as to professional competence or personal conduct issues raised by Chinle comprehensive Healthcare Facility and further damaged Plaintiff by failing to redeploy the Plaintiff to other assignments.

1

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §451, §1331, §1337, §1343, 41 U.S.C. §4712, 5 U.S.C. §2302, and 10 U.S.C. §2409.

2.      The contract breaches alleged to be unlawful herein were committed within the jurisdiction of the United States District Court for the Northern District of Oklahoma.

## EXHAUSTIAN OF ADMINISTRATIVE REMEDIES

3.      On October 23, 2021, the DHHS Office of Inspector General received Dr. McIntyre's complaint of reprisal filed under legal authority of 41 U.S.C. §4712.

4.      On March 8, 2022, the DHHS Office of Inspector General closed its file on Dr. McIntyre's complaint with no action taken.

5.      Thereafter, within 30-days of receiving the IG report the head of the executive agency concerned failed to determine whether there was sufficient basis to conclude that the contractor or grantee concerned had subjected the Complainant to a prohibited reprisal and the head of the executive agency failed to issue an order denying relief or taking other action as required by 41 U.S.C. §4712(c)(1).

6.      Herein the head of the executive agency did not issue any order either granting or denying relief to Dr. McIntyre.

7.      Under that circumstance Dr. McIntyre has exhausted his administrative remedies with respect to the complaint and the Complainant may bring a de Novo action at law or equity against the contractor or grantee to seek compensatory damages and other relief available under §4712 in the appropriate District Court of the United States which shall have jurisdiction over such action without regard to the amount in controversy.  (Section 4712(c)(2)).

## PARTIES

8.    The Plaintiff at all times herein is a citizen of the United States and a resident of the State of Oklahoma.

9.    At all times herein Defendant US Indian Health Service is a Department of the Executive Branch of the Federal Government of the United States headquartered in Rockville, Maryland Navaho Area Office and the Chinle Comprehensive Healthcare Facility are located at all times herein in the State of Arizona.

10.    Defendant Vista Staffing Solutions, Inc. is a Utah corporation with its main office at 2800 East Cottonwood Parkway, Suite 400, Cottonwood Heights, Utah, 84121.

11.    That there is complete diversity of citizenship which gives this Court venue and jurisdiction.

## BACKGROUND INFORMATION

12.    Plaintiff is at all times herein a licensed physician in good standing and holding licensure in the states of Kansas, Oklahoma, Montana, and Alaska.

13.    On or around January 11, 2021 Plaintiff contracted with Defendant Vista Staffing Solutions, Inc. to be placed with a Vista client that needed his professional medical services.

14.    Dr. McIntyre was deployed by Defendant Vista Staffing Solutions, Inc. to the Chinle Reservation, Chinle, Arizona in the position of Staff Psychiatrist.

15.    During his time at Chinle, Arizona the Plaintiff was at all times professionally competent and the plaintiff's personal conduct and deportment was appropriate and proper.

16.    In the course of his employment Plaintiff became aware of unlawful activities concerning a pharmacist WL who was providing pharmacy services at the Chinle, Arizona

3

Reservation. Despite the unlawful actions of the pharmacist, leadership at Chinle, Arizona did not take remedial action or curative action against him.

17.    On September 16, 2021 Plaintiff formally blew the whistle on Dr. Eric Ritchie and Dr. Andrew Baker, who failed to take remedial and curative action and to remove the pharmacist from his position of employment. Plaintiff blew the whistle by email to OIG Agent Lauren Hanover on September 16, 2021 at 8:39 a.m.

18.    On October 13, 2021 Plaintiff sent a follow up email at 8:38 a.m. to OIG Investigator Lauren Hanover again bringing facts and evidence to his attention against the pharmacist and whistleblowing on Dr. Ritchie and Dr. Baker who failed to take curative action.

19.    In retaliation thereof, on October 21, 2021 Dr. McIntyre was terminated orally by Dr. Ritchie who delegated that termination be communicated to the Plaintiff.

20.    Such retaliatory action by the Defendant United States Indian Health Service was contrary to 41 U.S.C. §4712(a)(1) which provides in pertinent part as follows, to-wit:

> "(1) **In general**--An employee of a contractor, subcontractor, or grantee may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body described in paragraph (2) information that the employee reasonably believes is evidence of gross mismanagement of a federal contract or grant, a gross waste of federal funds, an abuse of authority relating to a federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or grant." See also *Moore v. University of Kansas*, 118 F.Supp.3rd 1242 (D. Kan. 2015).

21.    Such retaliatory action by the Defendant US Indian Health Service was also contrary to 5 U.S.C. §2302(b)(8) to-wit:

> "Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority--
>
> (8) Take or fail to take, or threaten to take or fail to take, a personnel action with respect to any employee or applicant for employment because of--

(A) Any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences--

(i) Any violation of law, rule, or regulation, or

(ii) Gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. . . ." See *Wren v. MSPB*, 681 F.2d 867, 220 US APP D.C. 352 (1982).

22.     Such retaliatory action by Defendant Agency was also contrary to 10 U.S.C. §2409,

to-wit:

"Section 2409. **Contractor employees: Protection from reprisal for disclosure of certain information.**

(1) **Prohibition of reprisals**.--(1) An employee of a contractor, subcontractor, grantee, subgrantee, or personal services contractor may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body listed in paragraph (2) information that the employee reasonably believes is evidence of the following:

A. Gross mismanagement of a Department of Defense contract or grant, a gross misuse of Department funds, an abuse of authority relating to a Department contract, grant or a violation of law, rule, or regulation related to a department contract (including the competition for or negotiation of a contract (or grant))." See *Manion v. Spectrum Health Care Resources*, 966 F.Supp.2d 561 (E.D.N.C. 2013).

23.     Thereafter, one week later, on or around October 28, 2021 Dr. Ritchie announced

his sudden resignation effective December 17, 2021.

24.     Pursuant to his termination and discharge Plaintiff's last day at the Chinle

Reservation was November 4, 2021.

25.     Plaintiff's contract with Defendant Vista Staffing Solutions, Inc. contained the

following language in §4, to-wit:

"If Client reasonably finds the performance of Professional to be unacceptable for reasons of professional competence or personal conduct, it shall give notice to the Company and may remove Professional from the placement immediately."

26.     Dr. Ritchie failed to cite any professional incompetence or personal conduct by the Plaintiff to Defendant Vista Staffing Solutions, Inc. or, in the alternative, information he provided to the Defendant Vista Staffing Solutions, Inc. was demonstrably false and untrue.

27.     Defendant Vista Staffing Solutions, Inc. had a duty under the contract with Plaintiff to inquire into any allegations of professional competence or personal conduct transmitted by any client to see if there was a bonafide reasonable basis for sudden ending of a placement in a summary fashion and the Defendant Vista Staffing Solutions, Inc. failed and neglected to ascertain information forwarded by Dr. Ritchie was accurate, true or reliable.

28.     Defendant Vista Staffing Solutions, Inc. without investigation did not make any effort to establish the truth and veracity of information provided by Dr. Ritchie on behalf of the Defendant IHS.

29.     Such acts and omissions by Defendant Vista Staffing Solutions, Inc. were contrary to 41 U.S.C. §4712 (a)(1) which provides in pertinent part as follows, to-wit:

"(1) **In general**--An employee of a contractor, subcontractor, or grantee may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body described in paragraph (2) information that the employee reasonably believes is evidence of gross mismanagement of a federal contract or grant, a gross waste of federal funds, an abuse of authority relating to a federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or grant." See also *Moore v. University of Kansas*, 118 F.Supp.3rd 1242 (D. Kan. 2015).

## I. IHS BREACH OF CONTRACT WITH VISTA

30.     Plaintiff incorporates by reference all facts pled in Paragraphs 1 through 29.

31.     IHS contracted with Vista Staffing Solutions, Inc. for Vista to provide certain physicians and medical professionals to IHS for employment at the Chinle Reservation, Chinle, Arizona (CCHCF).

32.     Plaintiff was a third-party beneficiary of the contract between IHS and Vista Staffing Solutions, Inc.

33.     IHS breached its contract with Vista Staffing Solutions, Inc. to the detriment of third-party beneficiary Dr. McIntyre when it failed to contemporaneously "reasonably find the performance of Professional to be unacceptable for reasons of professional competence or personal conduct," (Section 4, Vista Staffing Solutions, Inc. Contract dated January 13, 2021).

34.     IHS never produced any contemporaneous evidence to Vista Staffing Solutions, Inc. of any of the required unacceptable "professional competence or personal conduct" as required to be provided to Dr. McIntyre and to Vista.

35.     IHS failed to contemporaneously disclose to Vista the IHS retaliatory discharge and removal action against Dr. McIntyre in October, 2021 based on Dr. McIntyre's protected actions of whistleblowing against IHS that began in September and early October, 2021.

36.     IHS's acts and omissions herein violated 18 U.S.C. §242, to-wit:

"Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the constitution or laws of the United States. . . . . . ."

37.     The IHS acts and omissions herein violated 25 U.S.C. §11.448, to-wit:

"Abuse of office.

A person acting or purporting to act in an official capacity or taking advantage of such actual or purported capacity commits a misdemeanor if, knowing that his or her conduct is illegal, he or she:

(a)     Subjects another to arrest, detention, search, seizure, mistreatment, dispossession, assessment, lien or other infringement of personal or property rights or

(b)     Denies or impedes another in the exercise or enjoyment of any right, privilege, power or immunity."

7

38.    IHS further violated the aforesaid contract with Vista Staffing Solutions, Inc. by exercising control relating to the manner in which or means by which Dr. McIntyre performed professional medical services or how Dr. McIntyre reached decisions in the practice of medicine (§11, Vista Staffing Solutions, Inc. Contract dated January 13, 2021).

39.    In October, 2021, Dr. McIntyre made repeated attempts to take a four-hour Basic Life Support (BLS) class at CCHCF. To not take advantage of that class would cause a several-day disruption of clinical services to Dr. McIntyre's gravely mentally ill, suicidal and homicidal psychiatric patients. The travel distance to take the BLS class off site in Albuquerque, New Mexico or Flagstaff, Arizona was more than 200 miles away from CCHCF. Dr. McIntyre's time away from the clinic would require a minimum of three-days. And there was a travel ban in place due to Covid-19 restrictions.

40.    Yet, IHS by and through Dr. Ritchie ignored all of the aforesaid factors and denied Dr. McIntyre's reasonable accommodation to address extreme health and public safety issues.

41.    The IHS acts and omissions therein violated 41 U.S.C. §4712, to-wit:

"(1) **In General--** An employee of a contractor, sub-contractor, or grantee may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body described in paragraph (2) information that the employee reasonably believes is evidence of gross mismanagement of a federal contract or grant, a gross waste of federal funds, an abuse of authority relating to a federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a federal contract (including the competition for or negotiation of a contract or grant)." See also *Moore v. University of Kansas*, 118 F. Supp. 3rd 1242 (D. Kan. 2015).

42.    Such retaliatory action by the IHS was also contrary to 5 U.S.C. §2302(b)(8) to-wit:

"Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority--

(8)    Take or fail to take, or threaten to take, or fail to take, a personnel action with respect to any employee or applicant for employment because of--

(A)    Any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences--

(i)    Any violation of law, rule or regulation, or

(ii)    Gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety......" See *Wren v. MSPB*, 681 F.2nd 867, 220 US APP D. C. 352 (1982).

43.    Such retaliatory action by IHS is also contrary to 10 U.S.C. §2409, to-wit:

**"Section 2409. Contractor Employees: Protection from reprisal for disclosure of certain information.**

**Prohibition of reprisals**.--(1) an employee of a contractor, subcontractor, grantee, subgrantee, or personal services contractor may not be discharged, demoted or otherwise discriminated against as a reprisal for disclosing to a person or body listed in ¶(2) information that the employee reasonably believes is evidence of the following:

A.    Gross mismanagement of a department of defense contract or grant, a gross misuse of department funds, an abuse of authority relating to a department contract, grant or a violation of law, rule, or regulation related to a department contract (including the competition for or negotiation of a contract (or grant))." See *Manion v. Spectrum Health Care Resources*, 966 F. Supp. 2d 561 (E. D. N. C. 2013).

44.    IHS acts and omissions herein also violated 42 U.S.C. §1395, to-wit:

**"Section 1395. Prohibition against any federal interference.**

Nothing in this sub-chapter shall be construed to authorize any federal officer or employee to exercise any supervision or control over the practice of medicine or the manner in which medical services are provided, or over the selection, tenure, or compensation of any officer or employee of any institution, agency, or person providing health services; or to exercise any supervision or control over the administration or operation of any such institution, agency, or person."

45.    IHS acts and omissions herein also violated 25 C.F.R., §11.48(b) which provides

in pertinent part, to-wit:

**"Abuse of office.**

A person acting or purporting to act in an official capacity or taking advantage of such actual or purported capacity commits a misdemeanor if, knowing that his or her conduct is illegal, he or she:

(a)    Subjects another to arrest, detention, search, seizure, mistreatment, dispossession, assessment, lien or other infringement of personal or property rights; or

(b)    Denies or impedes another in the exercise or enjoyment of any right, privilege, power or immunity."

46.    In August, 2021, IHS violated its contract with Vista Staffing Solutions, Inc. by denying Dr. McIntyre's request for exemption from SARS-COV2 immunization.

47.    Dr. McIntyre's application for medical exemption was supported by a letter from his longtime personal physician Dr. Richard P. Regan, MD. Dr. Regan in his letter detailed Dr. McIntyre's unique medical condition and history. And Dr. Regan concluded based on that longstanding medical evidence that "a compassionate waiver of the SARS-COV2 immunization is medically indicated." Dr. Regan's medical opinion is based on his position as personal physician to Dr. McIntyre since 1982. And Dr. Regan has also served as a scientific consultant in the areas including hematology and immuno-pathology. Dr. Regan is Board certified in hematology, immune-pathology, and virology.

48.    IHS provided no clinical findings or medical test results to support denial of Dr. McIntyre's request for exemption. IHS offered no medical evidence of any nature from any source that speaks to Dr. McIntyre's medical history. Nor did IHS offer any evidence that Dr. McIntyre faked his own medical condition. Nor did IHS attack Dr. Regan or point out any medical anomaly in Dr. Regan's letter supporting medical exemption for Dr. McIntyre.

49.    To this life and death issue of Dr. Mcintyre. IHS merely undertook an arbitrary and capricious action to deny his request by email dated August 19, 2021 from Dr. Ritchie.

50.    IHS acts and omissions herein violated 42 U.S.C. §1395 which provides as follows:

"**Section 1394.  Prohibition against any federal interference.**

Nothing in this subchapter shall be construed to authorize any federal officer or employee to exercise any supervision or control over the practice of medicine or the manner in which medical services are provided, or over the selection, tenure, or compensation of any officer or employee of any institution, agency, or person providing health services; or to exercise any supervision or control over the administration or operation of any such institution, agency, or person.

## II.  VISTA BREACH OF CONTRACT WITH DR. McINTYRE

51.      Plaintiff incorporates by reference all facts pled in Paragraphs 1 through 50.

52.      On January 13, 2021, Vista Staffing Solutions, Inc. did contract with Dr. McIntyre in a Professional Services Placement Agreement.

53.      Dr. McIntyre did comply with all terms and conditions of that contract.

54.      Vista breached the contract with Dr. McIntyre in the following particulars.

55.      Paragraph 4 of the contract provides the manner wherein Vista may cancel the placement of any professional.  That contract provides in pertinent part, to-wit:

"If Client reasonably finds the performance Professional to be <u>unacceptable for reasons of professional competence or personal conduct</u>, it shall give notice to Company and may then remove Professional from the placement immediately."

56.      Yet Vista canceled Dr. McIntyre's Professional Services Placement Agreement without any investigation to determine in what manner or if Dr. McIntyre's professional performance of the practice of medicine in connection with IHS was in any way "unacceptable for reasons of professional competence or personal conduct."

57.      Vista's failure to investigate was a breach of contract that allowed the IHS unlawful retaliatory actions against Dr. McIntyre to stand unchallenged and served as an unlawful basis to cancel the Professional Services Placement Agreement with Dr. McIntyre.

### III. IHS UNLAWFUL RETALIATION
### AGAINST DR. McINTYRE

58.    Plaintiff incorporates by reference all facts pled in Paragraphs 1 through 57.

59.    On or around January 11, 2021, Plaintiff contracted with Defendant Vista Staffing Solutions, Inc. to be placed with a Vista client that needed his professional medical services.

60.    Dr. McIntyre was deployed by Defendant Vista Staffing Solutions, Inc., to the Chinle Reservation, Chinle, Arizona, in the position of Staff Psychiatrist.

61.    During his time at Chinle, Arizona, the Plaintiff was at all times professionally competent and the Plaintiff's personal conduct and deportment was appropriate and proper.

62.    In the course of his employment, Plaintiff became aware of unlawful activities carried by a pharmacist W.L. who was providing pharmacy services at the Chinle-Arizona Reservation. Despite the unlawful actions of the pharmacist, leadership at Chinle, Arizona did not take remedial action or curative action against the pharmacist.

63.    On September 16, 2021 Plaintiff formally blew the whistle on Dr. Eric Ritchie, M.D. and Dr. Andrew Baker who failed to take remedial and curative action and to remove the pharmacist from his position of employment. Plaintiff's email was sent to OIG investigator Luren Hanover.

64.    On October 13, 2021, Plaintiff set a follow up letter to Luren Hanover of the Office of Inspector General again bringing facts and evidence to his attention against the pharmacist and whistleblowing on Dr. Eric Ritchie and Dr. Andrew Baker who failed to take curative action.

65.    In retaliation thereof, on October 24, 2021 Plaintiff was told he was orally terminated by Dr. Ritchie. It was Dr. Ritchie who delegated that termination be communicated to the Plaintiff by Vista Staffing Scheduling Director Abby Grayzel at Vista Staffing, 2800 E. Cottonwood Heights, Utah.

66.     Such retaliatory action by the Defendant United States Indian Health Services was contrary to 41 U.S.C. §4712(a)(1) which provides in pertinent part as follows, to-wit:

"(1) **In general--**

An employee of a contractor, subcontractor, or grantee may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body described in paragraph (2) information that the employee reasonably believes is evidence of gross mismanagement of a federal contract or grant, a gross waste of federal funds, and abuse of authority relating to a federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a federal contract (including the competition for or negotiation of a contract) or grant." See also _Moore v. University of Kansas_, 118 F.Supp.3d 1242 (D.) Kan. 2015.

67.     Such retaliatory action by the Defendant US Indian Health Services against Dr. McIntyre was also contrary to 5 U.S.C. §2302(b)(8), to-wit:

"Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority--

(8) Take or fail to take or threaten to take or fail to take, a personnel action with respect to any employee or applicant for employment because of--

(A) Any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences--

(i) Any violation of law, rule, or regulation, or

(ii) Gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. . . ." See _Wren v. MSPB_, 681 F.2d 867, 220 US APP D. C. 352 (1982).

68.     Such regulatory action by the Defendant IHS was also contrary to 10 U.S.C. §2409, to-wit:

"Section 2409. **Contractor employees: Protection from reprisal for disclosure of certain information.**

(i) **Prohibition of reprisal--(1)** An employee of a contractor, subcontractor, grantee, subgrantee, or personal services contractor may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person

or body listed in paragraph (2) the information that the employee reasonably believes is evidence of the following:

(A) Gross mismanagement of a Department of Defense contract or grant, a gross misuse of department funds, an abuse of authority relating to a department contract, grant or a violation of law, rule, or regulation relating to a department contract (including the competition for or negotiation of a contract (or grant))." See *Manion v. Spectrum Health Care Resources*, 966 F.Supp.2d 561 (E.D.N.C. 2013).

69.     Thereafter, one week later on or around October 28, 2021 Dr. Ritchie announced his sudden resignation effective December 17, 2021.

70.     Pursuant to his termination and discharge Plaintiff's last day at the Chinle Reservation was November 4, 2021.

71.     On November 16, 2021 Plaintiff sent another email to Agent Luren Hanover of the Office of Inspector General concerning unlawful actions at the Chinle Reservation.

72.     IHS did not directly discharge the Plaintiff but provided information to Vista Staffing and Vista Staffing verbally notified Dr. McIntyre by phone that he had been fired by Dr. Ritchie and that Dr. McIntyre had two weeks to pack up, finish his clinical duties, and leave his greatly mentally ill patients without psychiatric coverage for approximately 3 months.

73.     Vista Staffing's only concern at this juncture was to keep the Master Contract in full force and effect with Chinle Comprehensive Health Care Facility (CCHCF) and the Plaintiff was totally expendable after 12 years of working for Vista Staffing.  Critical emails were October 13, 2021 and October 15th, 18, 19, and 21st, 2021.

74.     The retaliatory discharge of Dr. McIntyre by Dr. Ritchie was approved by CEO Darlene Chee of Chinle Comprehensive Health Care Facility in violation of 5 U.S.C. §2302(b)(8) and Title 10 U.S.C. §2409, supra.

75.     The retaliatory discharge of by IHS violated 42 U.S.C. §1395 which provides as follows:

**"Section 1395.  Prohibition against any federal interference.**

Nothing in this subchapter shall be construed to authorize any federal officer or employee to exercise any supervision or control over the practice of medicine in the manner in which medical services are provided, or over the selection, tenure, or compensation of any officer or employee of any institution, agency, or person providing health services, or to exercise any supervision or control over the administration or operation of any such institution, agency, or person."

Those acts also violated 42 U.S.C. §4712 and 10 U.S.C. §2409, supra.

76.     That the Defendant Indian Health Services (IHS) has a long history of "Willfully ignoring Sexual Abuse" and misconduct at several of their facilities as documented by New York Times Journalist Mark Walker's October 5, 2021 article.

77.     CEO Darlene Chee and Navaho Area Office Chain of Command Director Roselyn Tso of Navaho Area IHS were totally aware of Dr. McIntyre's retaliatory firing and Dr. McIntyre was the only psychiatrist practicing in the entire Chinle Navaho Nation areas and patients were denied psychiatric care approaching three months, before Dr. McIntyre's replacement could be found.

78.     Pursuant to the American Medical Association ethical guidelines and the American Psychiatric Association ethical guidelines as set forth below Dr. McIntyre had a duty to report the sexual misconduct coverup of both Drs. Ritchie and Baker.

"(AMA ethics)
(APA ethics)"

79.     Plaintiff legal counsel's former demand letter to Darlene Chee with a copy to Roselyn Tso gave actual notice to both IHS officials of unlawful actions taken against Dr. McIntyre (see Exhibit 6 dated 12-14-2021).  The demand letter was rejected by CEO Ms. Chee with the Navaho Nation Area Office and Roselyn Tso was copied in on that formal demand.

80.    Acts attributed to the pharmacist WL constituted criminal offenses of aggravated sexual abuse in violation of 18 U.S.C. §2241 and sexual abuse as described at 18 U.S.C. §2242.

81.    The retaliatory discharge of Dr. McIntyre was also a violation of 42 U.S.C. §18116 which provides in pertinent part:

"**Section 18116--Nondiscrimination**.

**(a) In general.**

Except as otherwise provided for in this Title (or an amendment made by this Title), an individual shall not, on the ground prohibited under Title VI of the Civil Rights Act of 1964 (42 U.S.C. §2000d et seq.), Title IX of the Education Amendments of 1972 (20 U.S.C. §1618 et seq.), the Age Discrimination Act of 1975 (42 U.S.C. §6101 et seq.), or §794 of Title XXIX, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving federal financial assistance, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this Title (or amendments). The enforcement mechanisms provided for and available under such Title VI, Title IX, Section 794, or such Age Discrimination Act shall apply for purposes of violations of this sub-section."

## REFUSAL OF TRAINING

82.    Under the Plaintiff's employment contract through Vista Staffing it was within his scope of employment to request taking the Basic Life Support Class (BLS) in Chinle, due to the severe travel limitations/restrictions imposed by (IHS) at the full height of the Covid-19 epidemic and were in totally enforced during the Plaintiff's employment. Dr. Ritchie denied the Plaintiff's request for the aforesaid waiver.

83.    Evidence shows Dr. McIntyre followed the chain of command to obtain permission to take the four-hour Basic Life Support class at CCHCF. The denial of that request made by Dr. McIntyre would result in several days of disruption of clinical services to Dr. McIntyre's gravely mentally ill, suicidal, and homicidal psychiatric patients. Travel distance to take the BLS class in Albuquerque or Flagstaff is over 200 miles away from CCHCF. Title away from the clinic would

require a minimum of three days. There was as well a Federal Travel Ban in place, due to Covid-19 restrictions but Dr. Ritchie ignored all those factors in denying Dr. McIntyre's reasonable accommodation to complete the four-hour Basic Life Support Class to address extreme health and patient safety issues on the reservation.

84.    Dr. Ritchie was in violation of Vista Staffing, Inc.'s Professional Services Agreement, Paragraph 11 when Dr. McIntyre was refused the emergency waiver to take the Basic Life Support Class, see 41 U.S.C. §4712 and 42 C.F.R. §1395.

### REFUSAL OF VACCINATION EXEMPTION

85.    Under IHS regulations and policies at the time, the Plaintiff had every right to request of Dr. Ritchie exemption from the requirement for Covid-19 vaccination.

86.    The Plaintiff timely provided to Dr. Ritchie letter of medical diagnosis from the Plaintiff's personal physician Dr. Richard Regan and Dr. Ronald Lacey.

87.    When Plaintiff requested a complete copy of his own Employee Health Medical Record with the attached Medical Exemption letters signed by Dr. Regan and Dr. Lacey, as well as the exemption waiver letter signed by Dr. Ritchie the OCHCF Employees Health Department reported to Dr. McIntyre that his file "was currently lost" and Dr. McIntyre "would be called when the file was found."

88.    All of the aforesaid acts and omissions of retaliation against Dr. McIntyre for whistleblowing on Dr. Ritchie and Dr. Baker covering up sexual abuse by pharmacist W.L. was unlawful against the Plaintiff who was a whistleblower as defined by law.

89.    As a direct and proximate result of Defendant IHS' retaliation the Plaintiff incurred damages including but not limited to, lost income, loss of enjoyment of life, damage to his professional reputation, mental and emotional distress, mental anguish and depression.

## IV. IHS SUBJECTED DR. McINTYRE TO
## UNLAWFUL HOSTILE WORK ENVIRONMENT

90.     Plaintiff incorporates by reference all facts pled in Paragraphs 1 through 89.

91.     At all times herein Dr. McIntyre was a member of a statutorily protected class as a whistleblower against the acts and omissions of Dr. Eric Ritchie, Clinical Medical Director and Andrew Baker, MD, Assistant Clinical Medical Director at the Indian Health Services Chinle Comprehensive Health Care Facility (CCHCF) in Chinle, Arizona.

92.     Dr. McIntyre was subjected to unwelcome conduct to include but not limited to that set forth below.

93.     All of the hostility and harassment against Dr. McIntyre was based on his protected class as a whistleblower.

94.     The hostility and workplace harassment had the purpose and effect of unreasonably interfering with Dr. McIntyre's work performance and creating an intimidating, hostile and offensive work environment.

95.     That there is every factual basis to impute liability to the employer because Dr. Ritchie and Dr. Baker at all times herein acted in the position of employer of Dr. McIntyre at the Reservation.

96.     The IHS unlawful hostile work environment that was subjected on Dr. McIntyre included, but was not limited to the following, to-wit:

   a.     Removal and discharge of Dr. McIntyre without any contemporaneous identification to Dr. McIntyre or to Vista of unacceptable professional competence or personal conduct as set forth herein;

   b.     Arbitrary and capricious IHS denial of Dr. McIntyre to attend basic life support training class held in house at CCHCF;

   c.     Arbitrary and capricious denial of Dr. McIntyre's request for exemptions from the SARS-COV2 immunization without any contrary medical evidence;

d.     Unlawful termination removal or discharge of Dr. McIntyre in retaliation for Dr. McIntyre's protected action of whistleblowing on criminal conduct of pharmacist WL.

e.     Failure to address unlawful action of IHS by CEO Darlene Chee, CCHCF with the concurrence of Roselyn Tso, Navaho Area IHS.

97.    As a direct and proximate result of IHS retaliation the Plaintiff Dr. McIntyre incurred damages, including but not limited to lost income, loss of enjoyment of life, damage to his professional reputation, mental and emotional distress, mental anguish and depression.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Robert McIntyre, M.D. prays that pursuant to legal authority set forth above, this Court grant the following relief and judgment, to-wit:

a.     Order Defendants to compensate Plaintiff with monetary relief in an amount in excess of $75,000.00 for damages he suffered including, but not limited to, lost income, loss of enjoyment of life, damage to his professional reputation, mental and emotional distress, mental anguish and depression.

b.     Award Plaintiff all his attorney fees, costs and additional relief as justice may require.

## JURY TRIAL DEMAND

Plaintiff hereby demands the trial by on all issues pursuant to Rule 38 in the Rules of Civil Procedures be granted herein.

Respectfully submitted,

DANIEL J. GAMINO          OBA #3227
Daniel J. Gamino & Associates, P.C.
Jamestown Office Park, North Building
3035 NW 63rd Street, Suite 214
Oklahoma City, OK 73116

Telephone:     (405) 840-3741
Facsimile:     (405) 840-3744
Email: dgamino@coxinet.net
*Attorney for Plaintiff Robert McIntyre, M.D.*

*Verification attached*

## VERIFICATION

| STATE OF OKLAHOMA | ) | |
|---|---|---|
| | ) | ss. |
| COUNTY OF OKLAHOMA | ) | |

I, ROBERT McINTYRE, M.D. being of lawful age and first duly sworn upon oath, do hereby depose and state:

That I have read the above and foregoing instrument and know the contents thereof to be true and correct to the best of my knowledge and belief.

_Robert McIntyre_
ROBERT McINTYRE, M.D.

Subscribed and sworn to before me this 26th day of September, 2023.

_Diana Beck_
Notary Public

My Commission expires:

_____

DIANA BECK
Notary Public
State of Oklahoma
Commission # 04003306  Exp: 04/14/24