# United States District Court
## for the Northern District of Oklahoma

---

Case No. 23-cv-421-JDR-CDL

---

ROBERT MCINTYRE, M.D.,

*Plaintiff,*

*versus*

UNITED STATES INDIAN HEALTH SERVICE; VISTA STAFFING
SOLUTIONS, INC.,

*Defendants.*

---

## OPINION AND ORDER

---

Plaintiff Robert McIntyre, M.D., brought this action for breach of contract, unlawful retaliation, and maintaining a hostile work environment against Defendant United States Indian Health Services and Defendant Vista Staffing Solutions, Inc. Dkt. 1. Vista moves to dismiss the sole claim asserted against it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. 18. For the reasons discussed below, the Court grants the motion.

The allegations of the complaint, which the Court accepts as true for purposes of Vista's motion,[1] are as follows: Dr. McIntyre is a psychiatrist licensed to practice medicine in Kansas, Oklahoma, Montana, and Alaska. Dkt. 1 at ¶ 12. In 2021, he contracted with Vista to provide medical services for one of Vista's clients and was assigned to work for the IHS at a clinic on the Chinle reservation in Chinle, Arizona. *Id.* at ¶¶ 13-14. In the fall of 2021, Dr. McIntyre raised concerns about alleged wrongdoing by a pharmacist and

---

[1] *See McNellis v. Douglas Cnty. Sch. Dist.,* 116 F.4th 1122, 1130 (10th Cir. 2024).

Case No. 23-cv-421

two doctors. *Id.* at ¶¶ 16-18. Shortly thereafter, one of the doctors named in Dr. McIntyre's complaints instructed Vista to end Dr. McIntyre's placement. *Id.* at ¶ 19. Vista did so without conducting any investigation into the grounds set forth for the request. *Id.* at ¶¶ 55-56. At the same time, Vista cancelled the Professional Services Placement Agreement it had with Dr. McIntyre. *Id.*

Although Dr. McIntyre quotes from the Placement Agreement in his complaint, he did not provide a copy. *See* Dkt. 1. Vista, however, attached a copy to its motion, and there is no question of the authenticity of that document. *See* Dkt. 18-1 at 3-5; Dkt. 22 at 7 (quoting the agreement).[2] The Court therefore considers the substance of that agreement,[3] which includes the following language pertinent to the parties' dispute:

> 4.    ***Cancellation of a Placement.*** . . . If Client reasonably finds the performance of [Dr. McIntyre] to be unacceptable for reasons of professional competence or personal conduct, it shall give notice to [Vista] and may then remove [Dr. McIntyre] from the Placement immediately. . . .
>
> ***
>
> 23.    ***Term and Termination.*** This Agreement shall have a term of one (1) year commencing with the date of this Agreement, and shall be automatically renewed for succeeding one-year terms until terminated . . . . [Vista] may terminate this Agreement, and any and all placements of [Dr. McIntyre], immediately by oral or written notice in the event of . . . the request by a Client that [Dr. McIntyre] be removed for any reason during the term of a placement.

Dkt. 18-1 at 3, 5.

---

[2] All citations utilize CMECF pagination.

[3] *See Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017) (noting that, when resolving a motion to dismiss, a court may consider an undisputedly authentic document that is central to a claim and referenced in a pleading).

Case No. 23-cv-421

Vista argues that it has not breached any obligations it owed to Dr. McIntyre under the Placement Agreement because paragraph 23 authorized it to immediately terminate the agreement once the client—in this case, the Chinle clinic—requested that Dr. McIntyre be removed from his placement. Dkt. 18 at 4, 7. Dr. McIntyre, in response, argues Vista breached its implied duty to investigate the grounds for the clinic's request. He notes that paragraph 4 of the agreement required the clinic to make a reasonable finding that his conduct or competence fell below an acceptable standard prior to requesting his removal. Dkt. 22 at 5-6. And he argues that, as a result, Vista had an implied "duty to investigate the factual basis" for the clinic's request before taking any action. *Id.* According to Dr. McIntyre, Vista's decision to remove him from the clinic and terminate the Placement Agreement without any investigation constituted a violation of Vista's obligations of good faith and fair dealing. *Id.* at 6-7.[4]

Under Utah law, a contract is interpreted in a manner that gives effect to the intent of the parties as demonstrated by the plain language of the agreement when taken as a whole. *See Juarez v. Hudson Specialty Ins. Co.*, No. 23-4101, 2024 WL 3406141, at *4 (10th Cir. July 15, 2024); *Brady v. Park*, 445 P.3d 395, 407 (Utah 2019). If the language is unambiguous, the contract may be interpreted as a matter of law. *Marcantel v. Michael & Sonja Saltman Fam. Tr.*, 993 F.3d 1212, 1235 (10th Cir. 2021).

There is no ambiguity here. Paragraph 4 describes the circumstances that would permit a *client* to immediately terminate a *placement*. Dkt. 18-1 at 3. That paragraph does not place any limitations on *Vista's* ability to terminate the agreement itself. The circumstances that would allow Vista to terminate the Placement Agreement are described in paragraph 23, which permitted Vista to terminate the agreement immediately once the clinic requested his

---

[4] The agreement provides, and the parties do not dispute, that Utah law governs. *See* Dkt. 18 at 1; Dkt. 18-1 at 5; Dkt. 22 at 6.

Case No. 23-cv-421

removal—regardless of the reason for the request. *Id.* at 5. Paragraph 23 does not require that Vista establish the reasonableness of the client's request before terminating the agreement. It would strain the contract to the breaking point to interpret the clause permitting Vista to terminate the agreement upon receipt of a client's request to remove Dr. McIntyre "for any reason" to mean that Vista could only terminate the agreement if it independently verified that the client had grounds for terminating Dr. McIntyre's placement under paragraph 4. The Court will not adopt a construction that effectively eliminates the term "any reason" from paragraph 23. *Utah Farm Bureau Ins. Co. v. Crook*, 980 P.2d 685, 686 (Utah 2019) (recognizing the terms of an agreement should be harmonized within the agreement as a whole, and that "all provisions should be given effect if possible").

Dr. McIntyre suggests that, even if the Placement Agreement did not expressly require Vista to investigate the grounds for the removal request, it nevertheless had an obligation to do so pursuant to the implied covenant of good faith. Dkt. 22 at 6. Dr. McIntyre is correct that, under Utah law, every contract is subject to an implied covenant of good faith and fair dealing. *See Regal RealSource LLC v. Enlaw LLC*, 554 P.3d 1112, 1127 (Utah Ct. App. 2024), *cert. denied*, No. 20240967, 2024 WL 4686063 (Utah Oct. 10, 2024). But this implied duty simply requires that a contract "be construed in a manner which assumes the parties intended that the duties and rights created by the contract should be exercised in good faith." *Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 55 (Utah 1991). It cannot "establish new, independent rights or duties not agreed upon by the parties." *Id.* Nor can it "be used to nullify a right granted by a contract to one of the parties." *Id.* But that is precisely what Dr. McIntyre asks the Court to do when he argues that the contract "implies a covenant . . . that Vista would investigate" the reason for the clinic's request, even though the plain language of paragraph 23 does not require any investigation. Dkt. 22 at 8. In the absence of an express limitation on Vista's right to terminate the agreement when a client ends a placement, it would be improper for the Court to place a substantive limitation on that right based

Case No. 23-cv-421

on an implied covenant of good faith and fair dealing *See Brehany*, 812 P.2d at 55 (holding that, "in the absence of express terms limiting the right of an employer to discharge for any or no reason . . . it would be inconsistent to hold that an employer, on the basis of the implied covenant of good faith, is bound to a substantive limitation on the employer's right to discharge").

Neither the plain language of the Placement Agreement nor the implied duty of good faith required Vista to investigate the clinic's grounds for ending Dr. McIntyre's placement. Although Dr. McIntyre may be correct that the terms of the agreement do not work in his favor, they are the terms the parties agreed to, and the Court will not re-write the contract to create new obligations that are more suited to Dr. McIntyre's preferences. Under the agreement, Vista had no duty to investigate the reasons for the clinic's decision, and Dr. McIntyre has not pointed to any other duty allegedly breached by Vista. Accordingly, his breach-of-contract claim must be dismissed. *Juarez*, 2024 WL 3406141, at *8 (affirming dismissal where the defendant had no duty to defend or indemnify the plaintiff, and "did not breach the contract by declining to do so").

Neither party suggests any of Dr. McIntyre's remaining claims are asserted against Vista. *See* Dkts. 18, 22. The Court has reviewed the complaint and concludes that, while Vista is mentioned throughout the pleading, the remaining allegations are directed solely at the IHS. *See* Dkt. 1 at ¶¶ 19-22, 35, 42-43, 58-89, 96-97. Accordingly, Vista's motion to dismiss [Dkt. 18] is granted, and Dr. McIntyre's complaint is dismissed with prejudice as to Vista.

Dated this 21st day of November 2024.

_____

JOHN D. RUSSELL
*United States District Judge*